UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

FRITZ GUIRAND,

                      Defendant.
-------------------------------------------------------------X

For Online Publication Only

**ORDER**
19-cv-5260 (JMA)
17-cr-168 (JMA)

FILED
CLERK
10:35 am, Jul 27, 2023
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, District Judge:**

Defendant Fritz Guirand ("Defendant") has petitioned this Court, pro se, to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255. See Motion to Vacate, ECF No. 37; Amended Motion to Vacate, ECF No. 44 (collectively, the "Petition"). For the reasons set forth below, the Petition is DENIED.

## I. BACKGROUND[1]

**A. Plea, Sentence, and Prior Appeal**

On August 29, 2017, Defendant—who had been charged in a five-count indictment—appeared before the Honorable Joseph F. Bianco and, pursuant to a plea agreement, entered a guilty plea to a lesser included charge of Count Five, aiding and abetting the brandishing of a firearm in furtherance of a violent crime in aid of racketeering ("VICAR"), in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii). (See Minute Entry, ECF No. 16; August 29, 2017 Plea Transcript ("Plea Tr."), ECF No. 69-1.) In the plea agreement, Defendant waived any challenge to his sentence or conviction on appeal or by collateral attack if the sentence imposed was eighty-four (84) months or less. (Plea Tr. at 18:15-19:4.) At the plea hearing, Judge Bianco confirmed the

---

[1] Only background facts relevant to determination of the pending Petition are set forth herein.

terms of the plea agreement with Defendant, specifically his waiver of the right to appeal if his sentence was eighty-four (84) months or less. (Id. at 19:5-20:1.) Judge Bianco further confirmed that Defendant "had sufficient time to discuss the case with [defense counsel], including any possible defenses that you may have to this charge that you're pleading guilty to" and inquired whether Defendant was "satisfied with [defense counsel]'s representation of you in this case." (Id. at 6:7-14.) Defendant affirmed that he had reviewed possible defenses, and was satisfied, with defense counsel. (Id.) After hearing Defendant's allocution to the facts of his crime, Judge Bianco addressed the issue of a potential "self-defense" defense specifically and at length with Defendant and defense counsel. (Id. at 29:4-14.) Defendant again indicated under oath that he was aware of the potential defense but that he was willing to plead guilty. (Id. at 30:9-31:9.) Judge Bianco thereafter accepted Defendant's guilty plea. (Id. at 32:15-33:12.)

At Defendant's April 5, 2018 sentencing hearing, pursuant to the parties' stipulation and Defendant's plea agreement, Judge Bianco adopted the factual findings of the Pre-Sentence Investigation Report ("PSR") and determined that Defendant's Guidelines range was eighty-four (84) months to life imprisonment. (See April 5, 2018 Sentencing Transcript, ECF No. 69-2, at 2:17-5:1.) Defendant did not raise any issues regarding defense counsel's representation up to that point. Judge Bianco then sentenced Defendant to the minimum sentence of eighty-four (84) months imprisonment and imposed a five-year (5) term of supervised release. (See Minute Entry, ECF No. 28; Judgment, ECF No. 29.) On June 22, 2018, Defendant appealed his sentence and conviction. (See Notice of Appeal, ECF No. 31.) The following April, the Second Circuit dismissed the appeal as barred by the waiver contained in the plea agreement. (See Mandate of April 5, 2019, ECF No. 34.)

**B. Instant Collateral Attack**

On September 13, 2019, Defendant filed a pro se Section 2255 motion wherein he claimed that defense counsel provided ineffective assistance in connection with his guilty plea and the waiver of his right to appeal. (See ECF No. 37.) More specifically, Defendant argued that defense counsel "had ruled out that possibility" of claiming self-defense, which—given Judge Bianco's purported "reservations" regarding Defendant's plea allocution and willingness to waive his "self-defense" defense—both rendered Defendant's guilty plea and waiver of appellate rights involuntary or knowing and meant that defense counsel's representation was not objectively reasonable. (See generally Petition.)

On March 2, 2020, Defendant sought leave to amend his habeas petition to assert a claim that his conviction should be reversed pursuant to the Supreme Court's ruling in United States v. Davis, __ U.S. __, 139 S. Ct. 2319 (2019). Specifically, Defendant asserted that his conviction under Section 924(c), for aiding and abetting the brandishing of a firearm in furtherance of a VICAR, must be vacated as it was purportedly based on Section 924(c)'s now-unconstitutionally vague residual clause. (See Motion to Amend Motion to Vacate, ECF No. 40[2].) On March 16, 2020, Defendant filed an amended Section 2255 petition, which incorporated his Davis claim with his prior ineffective assistance of counsel claim. (See generally Petition.) The Government responded on February 4, 2021, (ECF No. 69, ("Govt. Resp.")), and Defendant filed a reply on February 25, 2021, (ECF No. 72). Defendant was released from prison in or about June 2023 but remains on supervised release for five years. (See generally Govt. Resp.; Minute Entry, ECF No. 28; Judgment, ECF No. 29.)

---

[2] The Court grants Defendant's motion for leave to file an Amended Petition, nunc pro tunc.

3

## II.  DISCUSSION

**A.  Section 2255 Standard**

Section 2255 permits a prisoner in custody to move to vacate, set aside, or correct the sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  To merit relief under Section 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citation omitted).  The petitioner must also show that the constitutional error had "substantial and injurious effect" that caused "actual prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted).  Moreover, to "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack" (cleaned up)).

Defendant's instant challenge is two-pronged:  (1) he received ineffective assistance of counsel during the plea negotiation process; and (2) his conviction was improperly predicated on Section 924(c)'s residual clause and thus runs afoul of Davis.  The Government argues that:  (1)

4

Defendant did not receive ineffective assistance of counsel; and (2) his Section 924(c) conviction was not predicated on that statute's residual clause.[3]

**B. Ineffective Assistance of Counsel**

Defendant alleges that his detrimental reliance on his prior counsel's alleged "failure to know and understand the law [of self-defense] in relation to the charges" led to Defendant entering into a disadvantageous plea agreement. (See Petition at 15-19.) This claim may be presently reviewed, as it "may appropriately be raised for the first time in a 2255 motion, 'whether or not the petitioner could have raised the claim on direct appeal.'" Harrington v. United States, 689 F.3d 124, 129 (2d Cir. 2012) (quoting Massaro v. United States, 538 U.S. 500, 504-09 (2003)). To prevail on an ineffective assistance claim, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness…under prevailing norms;" and (2) prejudice as a result of defense counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 692 (1984).

Under the first prong, a court must "eliminate the distorting effects of hindsight," "evaluate the conduct from counsel's perspective at the time," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different." Id. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome of the trial or appeal." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Strickland, 466 U.S. at 694). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the [petitioner] makes an

---

[3] As the Government does not allege that Defendant's instant motion is procedurally barred, the Court will proceed to its merits.

5

insufficient showing on one" of the Strickland prongs. Strickland, 466 U.S. at 697. "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel flounder on that standard." Perryman v. United States, No. 12-cr-123, 2021 WL 5834279, at *2 (E.D.N.Y. Dec. 9, 2021) (quoting Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001)).

1. Allegedly Erroneous Advice During Plea Negotiation Process

Defendant contends that he detrimentally relied on his counsel's lack of "an understanding of the law in relation to the facts of the case" prior to pleading guilty. Defendant alleges that:

> Mr Singer clearly did not have an understanding of the law in relation to the facts of the case. Because he did not have that understanding, he misinformed Mr. Guirand and caused Mr. Guirand to enter into a disadvantageous plea agreement with the government, waiving his right to appeal and collateral review rights and pleading guilty when there was a viable defense to the charge. Compounding the attorney's misinformation to the Court was the Government's agreement with Mr. Singer's misinformation. The Court relied upon this misinformation to find Mr. Guirand guilty.

(Petition at 16-17.)

"Statements made by a defendant during an allocution hearing carry a strong presumption of verity," see Blackledge v. Allison, 431 U.S. 63, 74 (1977), and a district court "ordinarily does not abuse its discretion in relying on them to discredit later unsupported assertions." United States v. Perkins, 229 F.3d 1136 (2d Cir. 2000) (citing United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir.1992)). "No hearing need be granted when the allegations on a motion to withdraw a guilty plea before sentencing merely contradict the record, are inherently incredible, or are simply conclusory." Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992) (citations omitted) (finding no evidentiary hearing was required where the defendant claimed that his plea "was the result of reliance on his attorney's incorrect characterization of the agreement and transmittal of an alleged promise made by the prosecutor," but those "unsupported allegations" were "contradicted [by]

6

Gonzalez'[s] earlier statements made under oath at his plea allocution." Id. at 1101; see also Rensing v. United States, No. 16-cr-442, 2021 WL 1326909, at *12 (S.D.N.Y. Apr. 8, 2021) (denying petitioner's ineffective assistance of counsel-based § 2255 petition and finding his "self-serving" and "conclusory" statements regarding his attorney's purported promises during the plea negotiation process were "directly contradicted by his sworn statements at [his] plea hearing").

Here, Defendant's allegations about Mr. Singer's purportedly erroneous legal advice are contradicted by Defendant's admissions during his plea hearing. Specifically, as made clear by Defendant's colloquy with Judge Bianco during Defendant's plea hearing, he was fully aware of the possibility of a self-defense claim and the court inquired of defense counsel in the petitioner's presence as to the viability of such a defense. The colloquy was as follows:

> THE COURT: What I mentioned, just make sure you had this discussion with Mr. Singer, is to make sure you had the discussion of some type of self-defense argument. He advises me that this is something that he looked into, and I presume discussed with you and that because you and your friend were the initial aggressor in terms of trying to commit the robbery, that you can't rely on self-defense that if something goes wrong and you and your cohort end up shooting at someone during the course of an attempted failed robbery. I just want to make sure that you discussed that with Mr. Singer, and you understand that you would have the right, if you wanted to, to try to make that type of defense to a jury. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Plea Tr. at 30-31.)

Prior to accepting Defendant's guilty plea, Judge Bianco sought (several) assurances from Defendant that he had discussed the possibility of the above-mentioned defense with counsel and that he was nonetheless willing to plead guilty. (See, e.g., Plea Tr. at 3, 19, 30-31.) The Court thus concludes that Defendant's claim that defense counsel was ill-informed about the facts of his case or unfamiliar with the applicable law is unsupported by the instant record.

Additionally, Defendant's claim that Mr. Singer's analysis of the potential self-defense argument under New York was erroneous (and objectively unreasonable) is meritless.

As detailed in the PSR, Defendant was a member of the Grape Street Crips, a Long Island section of the Crips street gang. (See PSR ¶¶ 2-7.) Between 2011 and 2014, the Grape Street Crips had an "ongoing turf war" with the Third Street Mafia Bloods street gang, where each gang committed acts of violence against each other. (Id. ¶ 7.) On June 3, 2012, Defendant and a fellow Grape Street Crip gang member robbed a Third Street Mafia Blood gang member of his motorbike at gunpoint and brandished a firearm in furtherance of that crime. (Id. ¶ 8.) During the robbery, another Third Street Mafia gang member observed the robbery and shot at Defendant and his fellow Crip gang member. (Id.) Defendant's fellow gang member returned fire at the gang member shooting at them. (Id.) While no one was injured because of the gunfire, Defendant was shot in the leg one week later, in retaliation for the June 3, 2012 robbery and shooting. (Id.)

Mr. Singer's advice that Defendant did not have a viable self-defense argument was not erroneous and was certainly not objectively unreasonable. Notably, Defendant's papers do not cite any authority indicating that he and his confederate would not be considered the "initial aggressor[s]" under the facts of this case.[4] See N.Y.P.L. § 35.15(1)(b) (stating that "justification" does not apply when defendant "was the initial aggressor").

Even assuming, arguendo, that Mr. Singer's assistance was not objectively reasonable, Defendant's ineffective assistance claim fails because he has failed to demonstrate any prejudice. Indeed, defense counsel negotiated a favorable plea agreement that allowed Defendant to plead guilty, in light of overwhelming evidence, to a lesser-included offense of one of the indictment's

---

[4] Defendant also argues, in passing, that Mr. Singer was ineffective for failing to interview the driver of the car—a rival gang member—who shot at Defendant and his confederate. That argument is patently meritless. Nothing in the record suggests that this individual was willing to be interviewed or would have provided a different account of the incident.

8

multiple counts. (See Plea Tr. at 30-33.) Defense counsel's efforts allowed Defendant to avoid going to trial, where he could have faced a minimum sentence of 35 years and a Guidelines range of life imprisonment if convicted of all charges. (Id.)

Defendant claims that he is innocent of the attempted assault, but never actually states that, if advised differently, he would have rejected the plea agreement and gone to trial on all the counts he was facing. Notably, the indictment separately charged Defendant with attempted murder, stemming from a May 2012 altercation with a rival gang member, whom Defendant allegedly (unsuccessfully) attempted to kill by shooting in the head. Defendant says nothing about those charges, which Defendant would have faced if he had rejected this plea offer.

Given these points and the instant record, the Court finds that no hearing is warranted, and Defendant's conclusory and self-serving allegations are not credible, and concludes that Defendant's ineffective assistance of counsel claim fails because he has failed to demonstrate that his counsel's performance was deficient in any respect or that he was prejudiced.

## C. Section 924(c) Conviction

Here, Defendant also seeks vacatur of his conviction and sentence pursuant to § 2255 based on the Supreme Court's decision in Davis. (See generally Petition.) Specifically, he argues that his predicate offense – attempted assault under New York Penal Law § 120.05(2) – is not a "crime of violence" under Section 924(c)'s "Elements Clause" and, thus, cannot support his conviction under that statute. (Id.) This argument is again meritless.

In Davis, the Supreme Court invalidated Section 924(c)'s residual clause – Section 924(c)(3)(B) – which defines a "crime of violence" as a crime that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used." The Davis Court found the residual clause to be unconstitutionally vague. See Davis, 139 S. Ct. at

2324-25. In doing so, however, the Supreme Court left intact the statute's "elements clause," which defines a "crime of violence" as "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); Davis, 139 S. Ct. at 2325 (noting that defendants had also been convicted under the elements clause for use of a firearm in the course of a robbery).

In determining whether an offense satisfies Section 924(c)'s "elements clause," the Court uses a "categorical" approach, meaning an offense only constitutes a "crime of violence" upon which a Section 924(c) conviction may be predicated if the offense satisfies the statute's "elements clause." See Feliz v. United States, No. 16-cv-4449, 2022 WL 4554460, at *1 (S.D.N.Y. Sept. 29, 2022). Under this approach, courts "evaluate whether the minimum criminal conduct necessary for conviction under a particular statute necessarily involves violence." United States v. Hendricks, 921 F.3d 320, 327 (2d Cir. 2019) (citations omitted). In doing so, courts "focus on the elements of the offense and do not consider the particular facts of the underlying crime." Id.

Based on the "elements cause," the Court rejects Defendant's request to vacate his conviction and sentence. Defendant voluntarily pled guilty to a lesser included charge of Count Five and admitted that he and a fellow gang member attempted to assault and rob a rival gang member at gunpoint, and that they brandished a firearm in furtherance of that crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and (ii). (See generally Plea Tr.)

Section 924(c) penalizes "any person who, during and in relation to any crime of violence or drug trafficking crime…uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c). Here, the indictment charged that the relevant "crime of violence" underlying Count Five (which charged Defendant with discharging a firearm during a crime of violence) was attempted assault under New York Penal Law §§ 120.05(2), 110.00, and

20.00.  During the plea hearing, Defendant specifically allocuted to a lesser included charge of Count Five, aiding and abetting the brandishing of a firearm in furtherance of a VICAR.  (See Plea Tr. at 20:2-28:23.)

As Defendant's conviction implicates Section 924(c)'s "crime of violence" definitions, the Court must consult the statute's "elements clause" to satisfy itself that Defendant pled guilty to a crime that satisfies the permissible, post-Davis definition of a "crime of violence."  A review of the relevant, post-Davis caselaw leads the Court to conclude that attempted assault under New York Penal Law §§ 120.05(2), 110.00, and 20.00 – which was incorporated into Defendant's instant conviction – qualifies as a "crime of violence" under Section 924(c)'s "elements clause." See United States v. Tabb, 949 F.3d 81, 86 (2d Cir. 2021), cert. denied, __, U.S. __, 141 S. Ct. 2793 (2021) (recognizing that because attempt under New York law requires both "intent to commit the crime and an action taken by an accused so near [to] the crime's accomplishment that in all reasonable probability the crime itself would have been committed[,]" and concluding that "because assault in the second degree under N.Y. Penal Law § 120.05(2) is a crime of violence involving the use of force, *attempt* to commit assault in the second degree is also categorically a crime of violence.") (emphasis in original); see also United States v. Laurent, 33 F.4th 63, 92 (2d Cir. 2022), cert. denied, __, U.S. __, 143 S. Ct. 394 (2022) (affirming defendant's Section 924(c) conviction and referencing Second Circuit precedent that "attempted assault under N.Y.P.L. § 120.05(2) necessarily and categorically requires the use of "physical force," and therefore qualifies as a "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(i)," which "is identical, in relevant part, to the definition of "crime of violence" under § 924(c)(3)(A)….") Defendant's motion thus fails on the merits, and the Court denies it in full.

## III. CONCLUSION

For the foregoing reasons, Defendant's Petition is DENIED. The Clerk of the Court is respectfully directed to close the corresponding civil case, No. 19-cv-5260.[5]

The Court declines to issue a certificate of appealability because Defendant has not made a substantial showing that he was denied a constitutional right. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED**.

Dated: July 27, 2023
    Central Islip, New York

/s/ (JMA)
Hon. Joan M. Azrack
United States District Judge

---

[5] Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for a § 2255 petitioner if it is "determine[ed] that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). Based on the above conclusions that Defendant's Petition is meritless, the Court denies his motions to appoint counsel, see ECF Nos. 45, 51, 62, and denies, as moot, his motions related to its administration of this Petition. See ECF Nos. 50, 54.